224 P.3d 983

**STATE of Arizona ex rel. ARIZONA STRUCTURAL PEST CONTROL COMMISSION, now known as Office of Pest Management, Plaintiff/Appellant,**

**v.**

**Larry W. TAYLOR, an individual, and Troy Taylor, an individual, Defendants/Appellees.**

No. 1 CA–CV 08–0746.

Court of Appeals of Arizona, Division 1, Department D.

Feb. 2, 2010.

Terry Goddard, Attorney General By Stephen D. Ball, Assistant Attorney General, Phoenix, Attorney for Appellant.

Trent Stewart, Gilbert, Attorney for Appellees.

## OPINION

JOHNSEN, Judge.

¶ 1 Early in 1994, the Arizona Structural Pest Control Commission ("Commission"), now known as the Office of Pest Management, imposed a civil penalty of $51,000 against Troy and Larry Taylor for performing pest control activities without a license. The Commission's order became final, but the Taylors did not pay the penalty. The Commission finally filed a civil suit in 2007 to convert the order into a judgment. The superior court entered judgment in favor of the Commission but refused its request to impose prejudgment interest. In the absence of a statutory mandate that interest accrues on an administrative penalty before it is converted into a judgment, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 The facts are not disputed. The Commission's 1994 order provided that the penalty "shall be paid within thirty (30) days" of the date of the order. The complaint the Commission filed in superior court named as defendants the Taylors and Larry Taylor's former wife, Patricia Taylor. The superior court granted the Commission's motion for summary judgment, but struck from the proposed form of judgment language imposing prejudgment interest of $72,391.67 on the $51,000 penalty. The court denied the Commission's motion to amend the judgment to include prejudgment interest and later entered a separate judgment against Patricia Taylor.

## DISCUSSION

### A. Jurisdiction.

¶ 3 The judgment entered against Larry and Troy Taylor was dated April 21, 2008. It did not resolve the Commission's claim against Patricia Taylor; that claim was resolved by entry of a default judgment on August 21, 2008. Larry and Troy Taylor argue the Commission's notice of appeal, filed on September 22, 2008, was untimely because it was not filed within 30 days of the April judgment against them. *See* Arizona Rule of Civil Appellate Procedure 9 (notice of appeal "shall be filed ... not later than 30 days after the entry of the judgment from which the appeal is taken").[1] "The timely filing of the notice of appeal is a prerequisite to appellate jurisdiction." *Wilkinson v. Fabry,* 177 Ariz. 506, 507, 869 P.2d 182, 183 (App.1992).

¶ 4 The April 2008 judgment did not dispose of the claims against all of the defendants; as noted, the Commission's claim against Patricia Taylor remained unresolved. Pursuant to Arizona Rule of Civil Procedure 54(b), therefore, the April 2008 judgment was not appealable because it lacked "an express determination [by the superior court] that there is no just reason for delay and ... an express direction for the entry of judgment." *See McHazlett v. Otis Eng'g Corp.,* 133 Ariz. 530, 532, 652 P.2d 1377, 1379 (1982). Lacking Rule 54(b) language, the Commission's judgment against Larry and Troy Taylor did not become appealable until entry of judgment against Patricia Taylor on August 21, 2008. Because the Commission filed its notice of appeal within the period provided after entry of the August 21 judgment, its appeal was timely, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101(B) (2003).

### B. Prejudgment Interest.

¶ 5 Whether a party is entitled to prejudgment interest is a question of law that we review *de novo. Scottsdale Ins. Co.*

---

1. The thirtieth day after August 21, 2008 was Saturday, September 18, 2008. *See* Arizona Rule of Civil Procedure 6(a) (when last day to perform an event falls on a Saturday or Sunday, the "period runs until" the next non-weekend day that is not a holiday).

*v. Cendejas*, 220 Ariz. 281, 288, ¶ 32, 205 P.3d 1128, 1135 (App.2009); *see Alta Vista Plaza, Ltd. v. Insulation Specialists Co.*, 186 Ariz. 81, 82, 919 P.2d 176, 177 (App.1995).

¶ 6 Prejudgment interest on a liquidated claim is a matter of right in an action on a contract or in tort. *Fleming v. Pima County*, 141 Ariz. 149, 155, 685 P.2d 1301, 1307 (1984). The Commission cites no authority for the proposition that interest accrues on an administrative civil penalty as a matter of common law; it argues the penalty order created a liquidated debt on which prejudgment interest accrued pursuant to A.R.S. § 44–1201(A) (2003). That statute provides, "Interest on any loan, indebtedness, judgment or other obligation shall be at the rate of ten per cent per annum, unless a different rate is contracted for in writing, in which event any rate of interest may be agreed to." *See L.M. White Contracting Co. v. St. Joseph Structural Steel Co.*, 15 Ariz. App. 260, 265, 488 P.2d 196, 201 (App.1971) (prejudgment interest accrues on liquidated contract claim pursuant to A.R.S. § 44–1201).

¶ 7 Issues of statutory interpretation are purely legal, and we review them *de novo*. *Mejak v. Granville*, 212 Ariz. 555, 556, ¶ 7, 136 P.3d 874, 875 (2006). Our primary goal is to determine legislative intent. *Cicoria v. Cole*, 222 Ariz. 428, 431, ¶ 12, 215 P.3d 402, 405 (App.2009). We first look to the plain meaning of the statute. *Wells Fargo Credit Corp. v. Tolliver*, 183 Ariz. 343, 345, 903 P.2d 1101, 1103 (App.1995). If the statute is ambiguous, we turn to the rules of statutory construction. *Stein v. Sonus USA, Inc.*, 214 Ariz. 200, 201, ¶ 3, 150 P.3d 773, 774 (App.2007). In doing so, we "consider the statute's context; its language, subject matter, and historical background; its effects and consequences; and its spirit and pur-

pose." *Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 268, 872 P.2d 668, 672 (1994).

¶ 8 As noted, A.R.S. § 44–1201 provides for interest on a "loan, indebtedness, judgment or other obligation." [2] Since the civil penalty at issue here is neither a loan nor a judgment, we conclude it may fall within § 44–1201 only if it is either an "indebtedness" or "obligation" within the meaning of the statute.

¶ 9 "Indebtedness" as used in § 44–1201 is not defined by statute or case law, but courts have used the term to refer to money owed pursuant to an agreement or court order. *See, e.g., Cavanagh v. Kelly*, 80 Ariz. 361, 363–64, 297 P.2d 1102, 1103 (1956) (installment contract created "indebtedness"); *Jarvis v. Jarvis*, 27 Ariz.App. 266, 268, 553 P.2d 1251, 1253 (1976) (court-ordered spousal maintenance or child support constitutes a "legal indebtedness" on which interest accrues from the date it is due).

¶ 10 Although we may consult a dictionary for the meaning of a statutory term, *Cannon v. Hirsch Law Office, P.C.*, 222 Ariz. 171, 177, ¶ 19, 213 P.3d 320, 326 (App.2009), the definitions offered for the term "indebtedness" are not dispositive. The word can mean "[t]he state of being indebted," defined in turn as "[c]ommitted or obligated to repay a monetary loan." Random House Webster's Unabridged Dictionary 970 (2001). But it also may mean simply "[a]n amount owed." *Id.; see* Black's Law Dictionary 783, 1137 (8th ed.) ("[s]omething owed; a debt"; "owing," in turn, is defined as "[t]hat is yet to be paid; owed; due").[3]

¶ 11 Section 44–1201 likewise does not define "obligation." The dictionary provides two general meanings for the word, the first of which is "something by which a person is bound or obliged to do certain things." Web-

**2.** Section 44–1201 might be read merely to set the *rate of interest* whenever interest otherwise is due on a "loan, indebtedness, judgment or other obligation," rather than to establish the rule that interest accrues on a "loan, indebtedness, judgment or other obligation." The fact that the statute has been held to authorize interest on any civil judgment of whatever kind, however, weighs against that construction of the statute. *See State v. Ott*, 167 Ariz. 420, 429, 808 P.2d 305, 314 (App.1990) (citing § 44–1201 for the propo-

sition that prevailing party in litigation is entitled to interest on the judgment at the statutory rate).

**3.** "Debt" also has multiple definitions, including, "1. something that is owed or that one is bound to pay to or perform for another ... 2. a liability or obligation to pay or render something." Webster's at 514; *see* Black's at 432 (defining "debt" as "Liability on a claim; a specific sum of money due by agreement or otherwise").

ster's at 1336; *see* Black's at 1104 ("[a] legal or moral duty to do or not to do something").[4] Alternatively, "obligation" is defined as "an agreement enforceable by law, originally applied to promises under seal" or "a document containing such an agreement." Webster's at 1336; *see also* Black's at 1104 ("[a] formal, binding agreement or acknowledgment of a liability to pay a certain amount or to do a certain thing for a particular person or set of persons; esp., a duty arising by contract").

¶ 12 Although the 1994 order came due 30 days after it was issued and arguably was "owed" after that date, the fundamental nature of the Commission's order was that it was a penalty. Section 44–1201 does not provide expressly for the accrual of interest on a penalty of any sort, nor do the established definitions of "indebtedness" or "obligation" necessarily encompass penalties.[5]

¶ 13 We note that under the common law, orders imposing criminal penalties do not bear interest. *State v. Lewandowski*, 220 Ariz. 531, 535, ¶ 12, 207 P.3d 784, 788 (App.2009) (observing that the rule precluding interest on a criminal penalty may have arisen out of " 'judicial unwillingness to expand punishment fixed for a criminal act beyond that which the plain language of the statute authorizes' ") (quoting *Rodgers v. United States*, 332 U.S. 371, 374, 68 S.Ct. 5, 92 L.Ed. 3 (1947)). In *State v. Foy*, 176 Ariz. 166, 859 P.2d 789 (App.1993), we considered whether A.R.S. § 44–1201 authorized accrual of interest on a criminal restitution order. We determined that a restitution order was a "criminal penalty" and noted the general rule

that a criminal penalty does not bear interest. *Id.* at 169, 859 P.2d at 792. Because § 44–1201 did not "clearly and plainly manifest an intent to alter the common law" that criminal penalties are not subject to interest, we concluded the statute did not apply. *Id.* at 171, 859 P.2d at 794.[6]

¶ 14 Consistent with our reasoning in *Foy*, we inspect § 44–1201 for a clear and plain manifestation of legislative intent that prejudgment interest should accrue on an administrative civil penalty. In the absence of any reference to "penalty" in the statute, we discern no intent by the legislature that § 44–1201 apply to penalties in general. Nor is any such intent apparent in the language of the statute under which the Commission imposed its penalty against the Taylors. The 1994 penalty order was issued pursuant to a statute that provided:

A. A priority of the commission is to identify persons or pest control advisors who are engaged in the business of structural pest control or as pest control advisors without a license from the commission.

B. The commission may do either or both of the following in relation to unlicensed structural pest control business or pest control advisor operations:

1. Issue a cease and desist order....

2. Impose on an unlicensed structural pest control business or pest control advisor a civil penalty of at least five hundred dollars for the first offense and at least seven hundred fifty dollars for the second or a subsequent offense.

A.R.S. § 32–2328 (Supp.1994).[7] The statute nowhere authorized interest to accrue on

---

4. Black's Law Dictionary explains, "The word has many wide and varied meanings. It may refer to anything that a person is bound to do or forbear from doing, whether the duty is imposed by law, contract, promise, social relations, courtesy, kindness, or morality." Black's at 1104.

5. Black's defines "penalty" as "[p]unishment imposed on a wrongdoer, usu. in the form of imprisonment or fine; esp., a sum of money exacted as punishment for either a wrong to the state or a civil wrong (as distinguished from compensation for the injured party's loss)." Black's at 1168.

6. Several years after our decision in *Foy*, the legislature amended the criminal restitution stat-

ute to provide expressly for the accrual of interest on restitution orders pursuant to A.R.S. § 44–1201. *See* A.R.S. § 13–805(C) (Supp.2009) ("A criminal restitution order may be recorded and enforced as any civil judgment.... Enforcement of a criminal restitution order ... includes the collection of interest that accrues pursuant to § 44–1201 in the same manner as any civil judgment").

7. Section 32–2328 was repealed in 2003. 2003 Ariz. Sess. Laws, ch. 115, § 22 (1st Reg.Sess.). The statute that currently authorizes civil penalties for the unlicensed performance of the business of structural pest control is A.R.S. § 32–2321 (Supp.2009).

penalties that the Commission was authorized to assess; neither did the statute refer to A.R.S. § 44–1201.

¶ 15 By contrast, the legislature has provided that certain other administrative penalty orders shall be treated as judgments on which interest accrues in accordance with A.R.S. § 44–1201. For example, A.R.S. § 3–3113 (2002) authorizes the Director of the Arizona Department of Agriculture to impose civil fines for the violation of certain health and safety rules. Subpart J of the statute expressly states that after an order imposing fines has become final, it "acts as a judgment" that "shall accrue interest pursuant to § 44–1201." A.R.S. § 3–3113(J). Likewise, in A.R.S. § 23–418(J) (1995), which authorizes imposition of penalties on employers that violate health and safety rules, the legislature similarly provided that a civil penalty "shall act as a judgment" and accrue interest pursuant to § 44–1201.

¶ 16 Under another provision, A.R.S. § 32–2188(I) (2008), a real estate broker loses his license when payment is made from the real estate recovery fund on a claim against him. In that statute, the legislature expressly stated that the broker is not eligible to receive a new license until he has repaid the amount in full, "plus interest at the rate provided by § 44–1201." Finally, the legislature expressly provided that civil penalties imposed against design professionals may be converted into judgments for recovery purposes. A.R.S. § 32–106.02(E) ("If a person fails to pay a civil penalty that the [board of technical registration] imposes within thirty days after the board issues the order . . . the board shall notify the attorney general. The attorney general may commence a civil action to recover the penalty.").[8]

¶ 17 In sum, the legislature expressly has provided for the accrual of interest on some administrative penalties but has not chosen to enact a rule that prejudgment interest runs on all administrative penalty orders.

Accordingly, and guided by *Foy* and the authorities on which it relied, we are reluctant to conclude that the legislature intended A.R.S. § 44–1201 to authorize accrual of prejudgment interest on any administrative civil penalty when the statute does not provide so expressly.

¶ 18 In authorizing civil penalties to be imposed upon pest control violators, the legislature provided neither that such penalties "shall act" as judgments on which interest would run pursuant to A.R.S. § 44–1201, nor did it otherwise provide for interest to accrue. Our record does not disclose the reason the penalty order in this case went uncollected for so long. The Commission could have triggered accrual of interest at any time by filing an action in the superior court (as it ultimately did) to convert the penalty into a judgment, after which postjudgment interest would have accrued pursuant to A.R.S. § 44–1201. We hold, however, that interest did not accrue pursuant to § 44–1201 prior to entry of judgment on the penalty order.

## CONCLUSION

¶ 19 For the foregoing reasons, we affirm the superior court's denial of prejudgment interest.

CONCURRING: PATRICIA A. OROZCO, Presiding Judge and JON W. THOMPSON, Judge.

---

8. When civil penalty orders "act" as judgments or judgments are obtained on civil penalty orders, the interest that subsequently accrues pursuant to A.R.S. § 44–1201 is post-judgment interest rather than prejudgment interest. *See, e.g.,* A.R.S. §§ 3–3113, 23–418, 32–106.02(E); *see also* A.R.S. § 13–805(C) (Supp.2009) (a criminal restitution order "may be recorded and enforced as any civil judgment," discussed *supra* note 6); *cf.* Ariz. Admin. Code R19–3–208 (E) (civil penalty imposed by the State Lottery Commission is subject to judicial review; interest pursuant to § 42–1201 accrues "from the date final judgment assessing a civil penalty is entered").